Case 8-20-70325-reg    Doc 32    Filed 04/30/20    Entered 04/30/20 15:08:56

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:                                                                                              Case No. 8-20-70325-reg

David Telles,                                                                                  Chapter 13

                                                Debtor.

------------------------------------------------------------------X

## Memorandum Decision

Before the Court is a motion for relief from the automatic stay *nunc pro tunc* to January 15, 2020 filed by Wilmington Savings Fund Society, FSB as owner trustee of The Residential Credit Opportunities Trust V-D ("Wilmington"). This is the second decision issued by this Court in response to the Supreme Court's holding concerning *nunc pro tunc* relief in *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano,* 140 S. Ct. 696 (2020). This decision accompanies *In re Benitez*, No. 19-70230 (REG), 2020 WL 1272258 (Bankr. E.D.N.Y. Mar. 13, 2020).

Wilmington holds a judgment of foreclosure and sale with respect to the property at 68 Paumanake Road, Blue Point NY 11715 (the "Property") belonging in part to David Telles (the "Debtor"). Wilmington purchased the Property at a foreclosure sale that took place two days after the Debtor filed a bankruptcy petition. Wilmington was unaware of the Debtor's bankruptcy filing at the time of the foreclosure sale. This lack of knowledge appears to be largely due to the Debtor's failure to notify the state court referee of his bankruptcy. Wilmington now asks this Court for relief from the automatic stay *nunc pro tunc* to the day before the sale. Wilmington argues that the Court should not permit such an obvious abuse of the bankruptcy laws to benefit the Debtor. Wilmington is not arguing that it did not violate the automatic stay, but it asks this

Court to utilize its power to grant the requested relief in the interest of fairness and in keeping with the purpose of the bankruptcy laws. This argument has been accepted in the past when courts, including courts in this district, have granted *nunc pro tunc* relief to correct what they in good faith believed were unfair results. While this Court has the utmost respect for the judges that have granted similar relief, this Court has never granted relief from the automatic stay *nunc pro tunc* to put its imprimatur on an otherwise void foreclosure sale. In the past, these motions have been routinely denied without issuing a written decision, but the Court finds that in light of *Acevedo*, the reasons for the Court's position are worth explaining.

In *Acevedo* the Supreme Court held that "[f]ederal courts may issue *nunc pro tunc* orders, or 'now for then' orders, . . . to 'reflect [] the reality' of what has already occurred . . . . 'Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court.' . . . Put colorfully, '[n]unc pro tunc orders are not some Orwellian vehicle for revisionist history — creating 'facts' that never occurred in fact.'" *Acevedo*, 140 S. Ct. at 700-01 The issue in *Acevedo* concerned orders issued by a state court that lacked jurisdiction at the time of their issuance. Because the state court did not have jurisdiction over the case, its orders were deemed void. The Supreme Court held that *nunc pro tunc* relief could not cure the jurisdictional defect and therefore the state court orders were void and of no force and effect.

The circumstances here are materially the same. The state court was divested of jurisdiction upon the filing of the Debtor's bankruptcy. Because the foreclosure sale whereby Wilmington acquired title to the property was held after the filing of the bankruptcy petition, the state court had already been divested of jurisdiction to conduct the foreclosure sale, rendering all subsequent acts by the state court in the foreclosure proceeding void. Therefore, as a matter of law Wilmington never received valid title to the Property, and the Debtor's interest in the

Property remains property of the bankruptcy estate subject to this Court's further orders. Even though the facts of this case as well as other cases pending across the nation may lead this Court to sympathize with a purchaser who successfully bids on such property without knowledge of the intervening bankruptcy, the Court cannot ignore or paper over the fact that we must abide by the law as set forth in the Bankruptcy Code. If these laws need to be amended it is the responsibility of Congress. The automatic stay is a bedrock principle of the bankruptcy laws. It provides a debtor with breathing space and promotes the preservation of a debtor's assets for the benefit of all creditors. The laws are equally clear regarding the circumstances pursuant to which a party may seek relief from the automatic stay. This Court does not believe it can avoid what is an unambiguous statute by artificially legitimizing a void foreclosure sale conducted *coram non judice* through use of a *nunc pro tunc* order. For these and the reasons that follow, Wilmington's motion is denied.

## Factual Background and Procedural History

The Debtor holds an interest in the Property. Mot. Ex. C. The Property is secured by a mortgage originally held by Onewest Bank, FSB. Non-debtor Jeffrey A. Bevis ("Bevis") is the mortgagor. Mot. Ex. A. Onewest Bank, FSB commenced a foreclosure action with respect to the Property on January 7, 2011. *Id.* The Debtor, who apparently resided at the Property but had no legal interest in the Property at the time, was included as a defendant in the foreclosure action. Manniello Aff. 2; Mot. Ex. A. A judgment of foreclosure and sale was entered on March 5, 2019. Mot. Ex. A. A sale was scheduled for May 16, 2019 (the "May Sale"). Mot. Ex. B.

Two days before the May Sale, Bevis deeded a ten percent interest in the Property to the Debtor. Mot. Ex. C. The Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code (the "Code") on the day after receiving an interest in the Property and one day before the

3

May Sale (the "First Bankruptcy"). The First Bankruptcy was dismissed pursuant to section 521(i) of the Code on July 1, 2019 for failure to file the required schedules and statements. After dismissal of the First Bankruptcy, a second foreclosure sale was scheduled for January 16, 2020 (the "January Sale"). Mot. Ex. F. The Debtor filed a second chapter 13 petition on January 14, 2020 (the "Second Bankruptcy"). Counsel for Wilmington represented that at some point before the January Sale Onewest Bank, FSB assigned its interest in the Property to Wilmington. Wilmington asserts that neither it nor the state court referee received notice from the Debtor of the Second Bankruptcy. Manniello Aff. 2-3. The Debtor maintains that counsel for Wilmington received proper notice. Opp'n. 1-2. Although representing that it had performed a search on the PACER database for any bankruptcies filed by Bevis on the day before and day of the January Sale, Wilmington admits it inadvertently neglected to perform a similar search for the Debtor – a named defendant in the foreclosure action. *Id.* at 4-5. Wilmington asserts that it did not receive notice of the Second Bankruptcy until a prospective purchaser obtained a title report. *Id* at 2-3. The January Sale was held as scheduled despite the filing of the Second Bankruptcy, and Wilmington emerged as the successful bidder. Mot. Ex. G.

The chapter 13 trustee filed a motion to dismiss the case returnable for April 30, 2020. Out of concern that the case would be dismissed before it could address the issues with the January Sale, Wilmington sought an emergency hearing where the Court would hear its motion to lift the automatic stay *nunc pro tunc* to January 15, 2020 prior to dismissal of the Second Bankruptcy (the "Motion"). The requested relief was designed for this Court to bless the state court sale of the Property. The Court issued an order to show cause on April 24, 2020 scheduling the matter to be heard with the chapter 13 trustee's motion to dismiss on April 30, 2020. The Debtor responded to the Motion and the chapter 13 trustee's motion to dismiss the case on the

4

day before the hearing, but the Debtor failed to appear at the hearing. At the hearing, Court denied the Motion and advised that a written decision would follow. The chapter 13 trustee's motion was adjourned to June 11, 2020 at 9:30 a.m.

## Discussion

*1. The Motion*

Wilmington relies on the assertion that "[a] bankruptcy court may enact an 'annulment'—granting relief from the automatic stay nunc pro tunc, thereby retroactively lifting the stay to permit a certain otherwise forbidden course of action, such as a civil litigation or a foreclosure proceeding." Manniello Aff. 3 (quoting *NKL Enters., LLC v. Oyster Bay Mgmt. Co., LLC,* No. 12-CV-5091 (ADS), 2013 US Dist LEXIS 59479, at *9 (E.D.N.Y. Apr. 25, 2013)). Wilmington also cites *In re Cunningham,* 506 B.R. 334 (Bankr. E.D.N.Y. 2014) and *In re Jean-Francois,* 516 B.R. 699 (E.D.N.Y. 2014) to support the proposition that other courts in this district have permitted the use of *nunc pro tunc* relief in similar situations. *See* Manniello Aff. 5.

Wilmington argues that (1) the Debtor should not be granted the "breathing room" of the automatic stay because he was already afforded that opportunity in the First Bankruptcy and took no steps to comply with his responsibilities as a debtor; (2) the Debtor never intended to proceed in good faith with this case, and the sole purpose for filing was to impede Wilmington's foreclosure efforts; and (3) Wilmington's continuation of the sale while the stay was in place was unintentional. Wilmington's position is that the conduct of the Debtor and Bevis combined with Wilmington's good faith participation in the subject proceedings give rise to "compelling circumstances" that would permit this Court to grant relief *nunc pro tunc* to January 15, 2020. Maniello Aff. 4-5. Wilmington also asserts that it is entitled to relief from the automatic stay pursuant to section 362(d)(2) because the amount of the subject mortgage exceeds the value of

5

the Property. Manniello Aff. 4-5. The Debtor states in response that (1) he filed the petition in good faith and has submitted the required documentation; (2) Wilmington's counsel received notice of this bankruptcy; and (3) the foreclosure sale was conducted in violation of the automatic stay and is therefore void *ab initio*. Opp'n. 1-4.

   2. *Nunc Pro Tunc Relief Under Acevedo Feliciano*

The Supreme Court recently provided guidance regarding requests for *nunc pro tunc* relief in the context of curing jurisdictional defects in a prior proceeding. While the facts of the case were complicated, the underlying principles are relatively straightforward. In *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano,* 140 S. Ct. 696 (2020), the Office of Superintendent of Catholic Schools of the Archdiocese of San Juan created a trust to administer a pension plan for Catholic school employees. *Acevedo,* 140 S. Ct. at 697. Active and retired employees filed complaints against the legal entity allegedly in charge of all Catholic institutions in Puerto Rico, the Archdiocese of San Juan, the Superintendent of Catholic Schools of the Archdiocese of San Juan, several academies, and the trust in the Puerto Rico Court of First Instance alleging that the trust had improperly terminated the pension plan. *Id.* After litigation concerning a preliminary injunction requiring the payment of benefits rose to the Supreme Court of Puerto Rico, the Supreme Court of Puerto Rico remanded the case to the Court of First Instance to determine who was responsible for continuing to pay the pensions pursuant to the preliminary injunction. *Id.* at 698. The Court of First Instance eventually determined that the Roman Catholic and Apostolic Church in Puerto Rico (the "Church") was the only defendant with separate legal personhood and ordered the Church to pay the employees pursuant to the pension plan. *Id.* The Court issued a second order ten days later requiring the Church to deposit $4.7 million in a court account and a third order requiring the sheriff to seize Church assets in

Puerto Rico the day after the second order. *Id.* After the Court of Appeals reversed the Court of First Instance's ruling, the Puerto Rico Supreme Court reversed the Court of Appeals and held that the only defendant with separate legal personhood and the only defendant who could be ordered to pay the employees' pensions was the Church. at 698-99.

The Archdiocese petitioned the Supreme Court for a writ of certiorari arguing that the Free Exercise and Establishment Clauses in the First Amendment entitled the Church to deference on how it structured itself, which meant that the separate legal personalities would exist for each diocese and parish in Puerto Rico. *Id.* at 699. The Solicitor General also filed a brief on behalf of the United States as *Amicus Curiae* arguing that the Puerto Rico Supreme Court violated the Free Exercise Clause. *Id.*

The Supreme Court held that it did not need to address the arguments of the Archdiocese or the Solicitor General because it found that the Court of First Instance lacked jurisdiction to issue the payment and seizure orders in the first place. *Id.* On February 6, 2018, post-remand from the Supreme Court of Puerto Rico, the Archdiocese removed the case to the District Court for the District of Puerto Rico, arguing that the subject trust filed for chapter 11 under the Code and that the dispute was sufficiently related to the bankruptcy for federal jurisdiction to exist. *Id.* at 700. The Bankruptcy Court dismissed the trust's bankruptcy on March 13, 2018. *Id.* Importantly, the three payment and seizure orders were issued March 16, 26, and 27, 2018 even though the District Court did not remand the case to the Court of First Instance until August 20, 2018. The remand order was entered *nunc pro tunc* to March 13, 2018. *Id.* at 700-01.

The Supreme Court found that the Court of First Instance had lost jurisdiction upon removal and that the three subject orders were "absolutely void." *Id.* at 700. Importantly, the Supreme Court held that the *nunc pro tunc* remand order could not save the deficiency. The

7

Supreme Court clarified that a *nunc pro tunc* order may not be used to cure the absence of a decree on a prior date and instead is properly used to correct the record to "reflect the reality of what has already occurred." *Id.* at 700-01 (internal citations and quotations omitted). Although dismissal occurred on March 13, 2018, the remand order was not entered simultaneously. As such, there was no record to correct "to reflect the reality of what has already occurred." *Id.* Even though the bankruptcy case was dismissed, the jurisdiction of the Court of First Instance was not restored until remand actually occurred, and a *nunc pro tunc* order from a federal court could not retroactively confer jurisdiction upon the state court. As a result, any actions performed by the Court of First Instance in the interim between dismissal and remand were held void and unenforceable. *Id.*

3. Analysis

The Court understands Wilmington's predicament. The Debtor was not a mortgagor, received a 10% interest in the Property days before the May Sale, and filed the First Bankruptcy just in time to stop the May Sale. The circumstances of the transfer are at best suspicious. Further, the Debtor notified neither Wilmington nor the referee of the Second Bankruptcy. The January Sale proceeded while Wilmington had no knowledge of the Second Bankruptcy.[1] The Court is aware of the apparent gamesmanship that accompanied the deeding of the Property to the Debtor and the filing of the Debtor's bankruptcies. No matter the outcome of the Debtor's case, absent granting *nunc pro tunc* relief from the automatic stay, Wilmington's options regarding the Property will be limited. It may be difficult for Wilmington to effectively transfer the Property to a third party because of issues surrounding title to the Property. The Debtor or

---

[1] It is worth noting Wilmington's failure to perform a PACER search for the Debtor even though the Debtor had already filed a petition to stop a sale once and was a named defendant in the foreclosure action.

another tenant may file for bankruptcy relief in an effort to stop another foreclosure sale from taking place, which will cause Wilmington to incur additional costs and expense.

Given the conduct described above, Wilmington seems like a strong candidate for retroactive relief. There is case law within this District which would support of such a finding. *See In re Cunningham,* 506 BR 334, 346 (Bankr. E.D.N.Y. 2014) (granting *nunc pro tunc* relief from the automatic stay after a debtor incorrectly filed a secured creditor's address on the creditor matrix, and the creditor never received notice of the bankruptcy); *In re Jean-Francois*, 516 B.R. 699, 704-07 (E.D.N.Y. 2014) (affirming a Bankruptcy Court's *nunc pro tunc* annulment of the automatic stay after the debtor filed for bankruptcy 20 minutes prior to a foreclosure sale and in light of a finding that the debtor acted in bad faith). Some courts would generally weigh seven factors when deciding whether to annul the automatic stay:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violations; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

*Cunningham*, 506 B.R. at 343-44.

While the Court recognizes the factual similarities among these and other decisions, Wilmington's reliance on *Cunningham* and *Jean-Francois* without taking into consideration *Acevedo* is misplaced. The landscape of the law is different post-*Acevedo,* and this Court is bound to follow the precedent set by the Supreme Court. The Supreme Court has clarified that *nunc pro tunc* relief cannot be used to confer jurisdiction where none existed. *Acevedo,* 140 S.Ct. at 700-01.  Once a debtor files for bankruptcy, the state court is divested of jurisdiction over

property of the estate, and any action taken by the state court with respect to the debtor's property is void. *See Id.* at 700 ("Once a notice of removal is filed, the [s]tate court shall proceed no further unless and until the case is remanded. The state court loses all jurisdiction over the case, and, being without jurisdiction, its subsequent proceedings and judgement are not simply erroneous, but absolutely void.") (internal citations and quotations omitted)

Here, the state court was divested of jurisdiction over the Debtor and the Property upon the filing of the Second Bankruptcy. The January Sale, which occurred two days after the filing of the Second Bankruptcy, was void.[2] *Acevedo,* 140 S.Ct. at 700.  The Bankruptcy Court cannot grant the *nunc pro tunc* relief sought by Wilmington because there was never a determination by this Court vacating the stay prior to the foreclosure sale.  In other words, *nunc pro tunc* relief cannot be used to change the outcome of a void foreclosure sale.  As this Court recognized prior to *Acevedo*, a *nunc pro tunc* order cannot bless a state court authorized foreclosure sale where the automatic stay has deprived the state court of such jurisdiction.

This Court is aware of four cases, other than *Benitez*, that have addressed *Acevedo* since its issuance, and none are inconsistent with the Court's finding that it cannot grant *nunc pro tunc* relief from the automatic stay in order to cure a jurisdictional defect in a state court proceeding. *In re Brzowski*, 798 Fed. Appx. 22, 23 (7th Cir. 2020) (quoting *Acevedo* for the assertion that "once a notice of removal is filed, the state court loses all jurisdiction over the case"); *Washington v. Reliance Standard Life Ins. Co.*, No. LA CV-20-01771 (JAK) (MRWx), 2020 U.S. Dist. LEXIS 67083, at *3 (C.D. Cal. Apr. 16, 2020) (quoting *Acevedo* for the assertion that "once a notice of removal is filed, 'the State court shall proceed no further unless and until the case is remanded'"); *In re Berk*, No. DG 17-04498 (SWD), 2020 Bankr. LEXIS 944, at *6

---

[2] To hold otherwise would prematurely dispose of rights that the Debtor still possessed in the Property.

(Bankr. W.D. Mich. Apr. 2, 2020) ("The Debtor asks the court to 'vacate' the Dismissal Order, presumably implying that the court and others should treat it as if it never happened, but after the recent decision of the Supreme Court in [*Acevedo*], it is not entirely clear that the court has authority to grant *nunc pro tunc* relief under the circumstances, or at least the court must hesitate before doing so."); *In re Goldberg*, No. 18-03592-5 (JNC), 2020 Bankr. LEXIS 869, at *3 n.1 (Bankr. E.D.N.C. Mar. 27, 2020) (Finding that a foreclosure sale that occurred pre-default under a reaffirmation agreement was valid after a consent order lifting the stay was entered roughly two months prior to the sale date and holding that the caption on the order stating *nunc pro tunc* was not in conflict with *Acevedo* because "unlike the order at issue [in *Acevedo*], the FCB consent order did not 'change history,' but rather solidified for the record an actual set of events. Usage of the term nunc pro tunc here is superfluous as the actual effect of the consent order is to protect FCB from needless collateral attack and bolster rather than change history."). The Court's holding does not conflict with its recent holding in *In re Benitez*, No. 19-70230 (REG), 2020 WL 1272258 (Bankr. E.D.N.Y. Mar. 13, 2020). *Benitez* concerned an application by a chapter 7 trustee seeking retention of general counsel *nunc pro tunc* to a date roughly eleven months prior to the filing of the subject motion. *Benitez,* 2020 WL 1272258, at 1. This Court found that *nunc pro tunc* relief was not required under the relevant sections of the Code and case law for the Court to rule on the retention motion. *Id.* at *3-5.

If the Court were to grant the Motion, this ruling would be squarely at odds with *Acevedo* and subject to reversal on appeal. Based on the Supreme Court's decision that *nunc pro tunc* relief cannot be granted to confer jurisdiction on a state court where none existed, the motion must be denied in its entirety.[3]

---

[3] The Court does not make any findings beyond a circumstance where a movant requests *nunc pro tunc* relief to legitimize an otherwise void action by a state court that lacked jurisdiction over the dispute.

**Conclusion**

For the reasons stated above, the Motion is denied. An order consistent with this Memorandum Decision will be entered forthwith.



Dated: Central Islip, New York
April 30, 2020

Robert E. Grossman
United States Bankruptcy Judge